**VERIZON DIRECTORIES CORP., Plaintiff,**

v.

**YELLOW BOOK USA, INC., Defendant.**

**No. 04–CV–0251(JBW).**

United States District Court, E.D. New York.

Aug. 17, 2004.

Charles B. Molster, III, Winston & Strawn, Washington, DC, Dan K. Webb, Winston & Strawn, Chicago, IL, John P. Frantz and John Thorne, Verizon Communications, Arlington, VA, Peter Dykema, Lawrence O. Kamin, Willkie Farr & Gallagher LLP, Richard Henry Dolan, Schlam Stone & Dolan, LLP, New York, NY, James M. Koukios, Steven G. Bradbury and Steven A. Engel, Kirkland & Ellis LLP, Washington, DC, for Plaintiff.

Carolyn Lisa Miller and Lawrence O. Kamin, Willkie Farr & Gallagher, LLP, New York, NY, Matthew A. Leish, Robert D. Balin, Samuel M. Leaf, Sharon Lee Schneier, Victor A. Kovner, Davis Wright Tremaine LLP, New York, NY, for Defendant.

*MEMORANDUM, JUDGMENT & ORDER*

WEINSTEIN, Senior District Judge.

In this bench trial, Verizon Directories Corporation has asserted claims for (1)

false representation in sales and marketing communications and false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (2) unfair competition and false advertising under sections 349 and 350 of the New York General Business Law. It alleges that Yellow Book USA, Inc. has repeatedly made false and misleading claims of superior usage of its yellow pages telephone directories, thus securing an unwarranted commercial advantage over Verizon.

Both parties have offered the reports and testimony of a number of experts. Defendant now moves to strike the testimony and exhibits of plaintiff's experts, Dr. Yoram Wind and Mr. Philip Johnson, to the extent they relied upon the survey results of defendant's expert, Dr. Jacob Jacoby. Although defendant submitted prior to trial Dr. Jacoby's expert report and a summary of his anticipated testimony were he to testify, the report was not ultimately offered into evidence by defendant and Dr. Jacoby was not called to testify.

Plaintiff argues that it does not seek to offer any of Dr. Jacoby's opinions into evidence. Rather, it seeks to admit Dr. Jacoby's survey results, pursuant to Federal Rule of Evidence 703, as the type of data upon which experts in the field customarily rely. Plaintiff's experts, Dr. Wind and Mr. Johnson, both testified at trial that Dr. Jacoby's data supported their own opinions that defendant's commercials communicated a message of superior usage.

In an affidavit, Dr. Jacoby indicated that he did not want any of the reports he prepared or the data he generated to be used in evidence for any purpose. The affidavit of Dr. Jacoby will be honored insofar as he cannot be called as a witness nor can the opinions he expressed in his deposition be used.

In the present case, the court previously expressed its reason for prohibiting the use by an opposing party of an expert's deposition testimony against his will when the party who had hired the expert did not proffer him as a testifying expert at trial. It denied plaintiff's motion to use the deposition testimony of another of defendant's experts not called as a witness at trial, Jeffrey Stein. *See* Hearing Tr., July 23, 2004, at 26 ("I will not enforce against [Mr. Stein] a subpoena if he's being called not as a fact witness but as an expert. I think an expert has, in general, a right not to be forced to testify with respect to his expert knowledge because by testifying as to his expert knowledge and opinion, he puts his professional life on the line...."); Trial Tr., Aug. 5, 2004, at 1251 (denying use of Mr. Stein's deposition testimony after receiving letter from him indicating that he did not wish his opinions to be used at trial).

Dr. Jacoby's request not to have any of his reports or the data generated under his direction used by plaintiff's experts is denied. This issue is different from that involving Mr. Stein because Dr. Jacoby's report and a summary of his anticipated testimony were furnished to the court and plaintiff as part of defendant's pre-trial submission of proposed expert testimony. Plaintiff and its experts were entitled to assume, on the facts of this case, that Dr. Jacoby would probably testify and that defendant would stand behind Dr. Jacoby's report and data. No work product problem is presented since Dr. Jacoby's opinion and data were voluntarily furnished to plaintiff by defendant. By contrast, Mr. Stein was not proffered by defendant as a proposed testifying expert and plaintiff's experts made no use of his data and opinions. Plaintiff wanted to use Mr. Stein's deposition testimony as independently probative of its case—a use opposed by defendant and Mr. Stein.

Plaintiff's experts may rely on Dr. Jacoby's data. *See* Fed.R.Evid. 702, 703. Although it is unclear whether plaintiff also seeks to admit Dr. Jacoby's expert report, it will be admitted for the limited purpose of clarifying the factual record as to the meaning of that portion of Dr. Jacoby's data referred to in plaintiff's experts' opinion testimony. Plaintiff's experts indicated that, although the Jacoby data and report were somewhat flawed, the portions they relied upon were of the kind and quality that would reasonably be relied upon by experts in their fields in forming their opinions. *See* Fed.R.Evid. 703.

The court will give little or no weight to the Jacoby data and report since neither has been adequately tested. Much of the survey evidence thus far produced by both sides has been biased and of dubious reliability. The Jacoby data is suspect because, among other reasons, the court's preliminary analysis suggested that some questions posed were inappropriate. It adds little or no weight to the opinion of plaintiff's experts, Dr. Wind and Mr. Johnson.

While the probative effect of the Jacoby report and data is almost nil, its potentially prejudicial effect has even less weight. *Cf.* Fed.R.Evid. 703 ("Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."). It will have no prejudicial effect in this bench trial. *Cf.* Fed.R.Evid. 703 advisory committee's note to 2000 amendments (stressing that guarding against the prejudicial effect of otherwise inadmissible data introduced to assist the trier of fact in evaluating an expert's opinion presents a danger of prejudicing *the jury* ).

Defendant's motion to strike the testimony and exhibits of plaintiff's experts resting on Dr. Jacoby's survey results is denied.

SO ORDERED.